1  BENJAMIN B. WAGNER
Acting United States Attorney
2  R. STEVEN LAPHAM
Assistant U.S. Attorney
3  501 I Street, Suite 10-100
Sacramento, California 95814
4  Telephone: (916) 554-2724



5

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,        )    CR. No. S-07-096 LKK
                                     )
11              Plaintiff,           )    PLEA AGREEMENT
                                     )
12      v.                           )
                                     )
13  MARK C. ANDERSON,                )
                                     )    DATE: November 16, 2009
14                                   )    TIME: 2:30 a.m.
                Defendant.           )    COURT: #4
15  _____ )

16

17                              I.

18                        **INTRODUCTION**

19      **A.  Scope of Agreement:**  The indictment in this case charges

20  the defendant with arson, interstate transportation of stolen

21  property, mail fraud, use of a fictitious name in relation to a mail

22  fraud, and tax evasion.  This document contains the complete Plea

23  Agreement between the United States Attorney's Office for the

24  Eastern District of California (the "government") and the defendant

25  regarding this case.  This Plea Agreement is limited to the United

26  States Attorney's Office for the Eastern District of California and

27  cannot bind any other federal, state, or local prosecuting,

28  administrative, or regulatory authorities.

                                1

1    **B.   Court Not a Party:**  The Court is not a party to this Plea
2  Agreement.  Sentencing is a matter solely within the discretion of
3  the Court, the Court is under no obligation to accept any
4  recommendations made by the government, and the Court may in its
5  discretion impose any sentence it deems appropriate up to and
6  including the statutory maximum stated in this Plea Agreement.  If
7  the Court should impose any sentence up to the maximum established
8  by the statute, the defendant cannot, for that reason alone,
9  withdraw his guilty plea, and he will remain bound to fulfill all of
10  the obligations under this Plea Agreement.  The defendant
11  understands that neither the prosecutor, defense counsel, nor the
12  Court can make a binding prediction or promise regarding the
13  sentence he will receive.

14                                **II.**

15                    **DEFENDANT'S OBLIGATIONS**

16    **A.   Guilty Pleas:**  The defendant will plead guilty to each and
17  every count contained in the indictment.  Specifically, he will
18  plead guilty to Count One which charges Arson Resulting in personal
19  injury, in violation of Title 18, United States Code, Section
20  §844(I); Counts Two through Five which charge interstate
21  transportation of stolen property; Counts Six through Fourteen which
22  charge mail fraud; Count Fifteen which charges use of a fictitious
23  name in relation to a mail fraud scheme; and Counts Sixteen through
24  Nineteen which charge income tax evasion.  The defendant will plead
25  guilty because he is in fact guilty of these offenses and agrees
26  that the facts set forth in the Factual Basis attached hereto as
27  Exhibit A are accurate and that, if this case were to proceed to
28  trial, the government would be able to establish beyond a reasonable

                                   2

1 doubt each and every element of the offense.

2     **B.**  **Restitution:** The Mandatory Victim Restitution Act requires
3 the Court to order restitution to the victim of certain offenses
4 including fraud.  The defendant understands and agrees that payment
5 of full restitution shall be a special condition of any term of
6 supervised release ordered in this case. Defendant further agrees
7 that he will not seek to discharge any restitution obligation or any
8 part of such obligation in any bankruptcy proceeding.

9     **C.**  **Fine:**  The defendant understands that the court may order a
10 monetary fine in addition to a term of imprisonment, restitution and
11 a special assessment.  The defendant agrees to pay any such fine as
12 may be ordered by the court.

13     **D.**  **Special Assessment:**  The defendant agrees to pay a special
14 assessment of $1,900 at the time of sentencing by delivering a check
15 or money order payable to the United States District Court to the
16 United States Probation Office immediately before the sentencing
17 hearing.  The defendant understands that this Plea Agreement is
18 voidable by the government if he fails to pay the assessment prior
19 to that hearing.

20                                    **III.**

21                     **THE GOVERNMENT'S OBLIGATIONS**

22   **A.**  **Recommendation:**

23        **1.**  **Incarceration Range:**  The government agrees to
24 recommend the low end of the applicable range of the advisory
25 sentencing guidelines as set forth in the stipulations set forth in
26 Paragraph VI B.

27        **2.**  **Acceptance of Responsibility:** If the United States
28 Probation Office determines that a two-level reduction in

                                       3

1  defendant's offense level for his full and clear demonstration of
2  acceptance of responsibility is appropriate under U.S.S.G. § 3El.1,
3  the government will not oppose such a reduction and will so move
4  under §3E1.1(b), so long as the defendant pleads guilty, meets with
5  and assists the probation officer in the preparation of the pre-
6  sentence report, is truthful and candid with the probation officer,
7  and does not otherwise engage in conduct that constitutes
8  obstruction of justice within the meaning of U.S.S.G § 3Cl.1, either
9  in the preparation of the pre-sentence report or during the
10 sentencing proceeding.

11                            **IV.**

12                  **ELEMENTS OF THE OFFENSE**

13     **A.  Elements of the Offense:**  At a trial, the government would
14 have to prove beyond a reasonable doubt the following elements of
15 the offenses to which the defendant is pleading guilty:

16     Arson

17     (1) That the defendant caused a building to be damaged or
18 destroyed by means of fire.

19     (2) That the building which was damaged or destroyed was used
20 in interstate commerce or in an activity affecting interstate
21 commerce;

22     (3) That the defendant acted maliciously; and

23     (4) That as a direct and proximate result of this conduct
24 personal injury resulted to any person including a public safety
25 officer.

26     Interstate Transportation of Stolen Property

27     (1) That the defendant moved or caused to be moved from one
28 state to another stolen, converted, or fraudulently obtained

                              4

1  property worth at least $5,000;

2      (2) That at the time the property crossed state lines, the
3  defendant knew it was stolen, converted or obtained by fraud; and

4      (3) That the defendant intended to deprive the owner of the use
5  of the property temporarily or permanently.

6      Mail Fraud

7      (1) That the defendant made up a scheme or plan to obtain money
8  or property by making false promises or statements, with the jury
9  agreeing on at least one false promise or statement that was made;

10     (2) That the defendant knew that the promises or statements
11 were false;

12     (3) That the promises or statements were of a kind that would
13 reasonably influence a person to part with money or property;

14     (4) That the defendant acted with intent to defraud; and

15     (5) That the defendant used, or caused to be used, the mails or
16 a private or commercial interstate common carrier to carry out or
17 attempt to carry out an essential part of the scheme.

18     Use of a Fictitious Name

19     That for the purpose of conducting, promoting or carrying on
20 the mail fraud scheme, the defendant used or assumed a false or
21 fictitious name as charged in the indictment - namely Joseph
22 Throckmorten or Peter Martin.

23     Tax Evasion

24     (1) That the defendant owed more federal income tax for the
25 calendar year charged than was declared due on the defendant's
26 income tax return for that year;

27     (2) That the defendant knew that more federal income tax was
28 owed than was declared due on the defendant's income tax return;

5

1    (3) That the defendant made an affirmative attempt to evade or
2 defeat an income tax; and

3    (4) That in attempting to evade or defeat such additional tax,
4 the defendant acted willfully.

**V.**

**MAXIMUM SENTENCE**

7    **A.  Maximum Penalty:**  The maximum sentence that the Court can
8 impose on Count One is a mandatory minimum 7 years and a maximum of
9 40 years of incarceration, a fine of $250,000, a 5 year period of
10 supervised release and a special assessment of $100.

11    The maximum sentence that the Court can impose on Counts Two
12 through Five is 10 years of incarceration, a fine of $250,000, a 3
13 year period of supervised release and a special assessment of $100
14 for each count.

15    The maximum sentence that the Court can impose on Counts Six
16 through Fourteen is 20 years of incarceration, a fine of $250,000, a
17 3 year period of supervised release and a special assessment of $100
18 for each count.

19    The maximum sentence that the Court can impose on Count Fifteen
20 is 5 years of incarceration, a fine of $250,000, a 3 year period of
21 supervised release and a special assessment of $100.

22    The maximum sentence that the Court can impose on Counts
23 Sixteen through Nineteen is 5 years of incarceration, a fine of
24 $250,000, a 5 year period of supervised release and a special
25 assessment of $100 for each count.

26    By signing this Plea Agreement, the defendant also agrees that
27 the Court can order the payment of restitution for the full loss
28 caused by the defendant's wrongful conduct.  The defendant agrees

6

1  that the restitution order is not restricted to the amounts alleged
2  in the specific count to which the defendant is pleading guilty.
3  The defendant further agrees that he will not attempt to discharge
4  in any present or future bankruptcy proceeding any restitution
5  imposed by the Court.

6          **B.   Violations of Supervised Release:** The defendant understands
7  that if he violates a condition of supervised release at any time
8  during the term of supervised release, the Court may revoke the term
9  of supervised release and require the defendant to serve up to 5
10 additional years imprisonment.

11                                   **VI.**

12                        **SENTENCING DETERMINATION**

13         **A.   Statutory Authority:** The defendant understands that the
14 Court must consult the Federal Sentencing Guidelines (as promulgated
15 by the Sentencing Commission pursuant to the Sentencing Reform Act
16 of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
17 modified by United States v. Booker and United States v. Fanfan,
18 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into
19 account when determining a final sentence.  The defendant
20 understands that the Court will determine a non-binding and advisory
21 guideline sentencing range for this case pursuant to the Sentencing
22 Guidelines.  The defendant further understands that the Court will
23 consider whether there is a basis for departure from the guideline
24 sentencing range (either above or below the guideline sentencing
25 range) because there exists an aggravating or mitigating
26 circumstance of a kind, or to a degree, not adequately taken into
27 consideration by the Sentencing Commission in formulating the
28 Guidelines.  The defendant further understands that the Court, after

                                     7

1  consultation and consideration of the Sentencing Guidelines, must
2  impose a sentence that is reasonable in light of the factors set
3  forth in 18 U.S.C. § 3553(a).

4  **B.  Stipulations Affecting Guidelines Calculation:** The
5  government and the defendant agree that the guideline calculations
6  are controlled by the arson guidelines and that under the multiple
7  count rules, the defendant's conviction on the remaining counts do
8  not add to his overall offense level.  The government and the
9  defendant agree that there is no material dispute as to the
10  following sentencing guidelines variables and therefore stipulate to
11  the following:

12  **Arson**

13      **1.  Base Offense Level:** Pursuant to USSG §2K1.4(a)(4),
14      the base offense level for Count One is 2 plus the offense
15      level from §2B1.1.

16      **2.  Offense Level from §2B1.1:**

17          **(a) Base Offense Level:**  Pursuant to USSG
18      §2B1.1(a)(2),  the base offense level is 6.

19          **(a) Amount of loss:** The parties agree that the
20      loss in this case is difficult to determine.  For the purpose
21      of calculating the defendant's guidelines, the parties
22      agree that a reasonable estimation of loss attributable to the
23      defendant's actions would not exceed $200,000,000, thus
24      increasing the offense level by 26.   USSG §2B1.1(b)(1)(N).

25          **(b) Number of victims:** The offense involved more than
26      50 victims, thus increasing the offense level by 4.

27      **6.  Adjusted Offense Level:** 38

28      **7.  Acceptance of Responsibility:**  If the United States

8

1    Probation Office determines that a two-level reduction in
2    defendant's offense level for his full and clear demonstration
3    of acceptance of responsibility is appropriate under U.S.S.G.
4    § 3E1.1, the government will not oppose such a reduction so
5    long as the defendant pleads guilty, meets with and assists the
6    probation officer in the preparation of the pre-sentence
7    report, is truthful and candid with the probation officer, and
8    does not otherwise engage in conduct that constitutes
9    obstruction of justice within the meaning of U.S.S.G § 3C1.1,
10   either in the preparation of the pre-sentence report or during
11   the sentencing proceeding.

12       **8. Criminal History:** The parties will leave calculation
13   of the defendant's criminal history score to the Probation
14   Officer, but believe the defendant falls into Criminal History
15   Category I.  If the parties are incorrect, the advisory
16   guideline range will be effected accordingly.

17       **9. Guideline Range:** 188-235 months.

18   **C.  Departures or Other Enhancements or Reductions:** The
19   defendant may argue for a downward variance from the Sentencing
20   Guidelines based on factors set forth in 18 U.S.C. §3553(a) or under
21   United States v. Booker, 543 U.S. 220 (2005).

22                               **VII.**

23                              **WAIVERS**

24       **A.  Waiver of Constitutional Rights:**  The defendant understands
25   that by pleading guilty he is waiving the following constitutional
26   rights:

27       **1.  Public and Speedy Trial:**  If defendant were to
28   continue with his plea of not guilty to the charges in the

                                 9

1  indictment, he would be entitled to a public and speedy trial.

2      **2.  Jury Trial, Presumption of Innocence, Unanimous**
3  **Verdict:**  The defendant has an absolute right to a jury trial.  At
4  that trial, the jury would be instructed that the defendant is
5  presumed innocent and that he carries that presumption throughout
6  the trial until such time as the government overcomes the
7  presumption by evidence adduced at the trial.  The jury would be
8  further instructed that it could not convict the defendant unless
9  all twelve jurors agreed that the government had proved guilt beyond
10 a reasonable doubt.

11      **3.  Confrontation of Witnesses:**  At the trial, the
12 defendant would be entitled to see, hear and confront the witnesses
13 and the evidence against him.  These witnesses would be testifying
14 under the penalty of perjury and would be subject to cross-
15 examination by the defendant's attorney.

16      **4.  Compulsory Process:**  At the trial, the defendant would
17 be entitled to present witnesses and other evidence in his own
18 behalf and, if the witnesses refused to appear voluntarily, the
19 defendant would be entitled to use the court's process to compel
20 their attendance.

21      **5.  Privilege Against Self Incrimination:**  At a trial, the
22 defendant would have a privilege against self-incrimination so that
23 he could not be compelled to testify and the jury could be
24 instructed that no inference of guilt could be drawn from the
25 defendant's failure to testify.

26      **6.  Right to Appeal:**  If, after a trial, the defendant
27 were convicted, he would have a right to appeal the conviction.

28      **7.  Representation of Counsel:**  The defendant is entitled

10

1 to be represented by competent counsel through all stages of the
2 case, including appeal, and if the defendant could not afford an
3 attorney one would be appointed for him by the court.

4 Defendant understands that by pleading guilty he is waiving all
5 of the rights set forth above. Defendant's attorney has explained
6 those rights to him and the consequences of his waiver of those
7 rights and the defendant freely and voluntarily consents to said
8 waiver.

9 **B. Waiver of Appeal and Collateral Attack:** The defendant
10 understands that the law gives him a right to appeal his conviction
11 and sentence. He agrees as part of his plea, however, to give up
12 the right to appeal the conviction and the right to appeal any
13 aspect of the sentence imposed in this case so long as his sentence
14 is no longer than the top of the Sentencing Guidelines range
15 determined by the Court consistent with the stipulations set forth
16 above about the Sentencing Guidelines variables (that is, an
17 adjusted offense level of 23 or below). He specifically gives up his
18 right to appeal any order of restitution the Court may impose.

19 Regardless of the sentence he receives, the defendant also
20 gives up any right he may have to bring a post-appeal attack on his
21 conviction or his sentence. He specifically agrees not to file a
22 motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
23 sentence.

24 If the defendant ever attempts to vacate his plea, dismiss the
25 underlying charges, or reduce or set aside his sentence on any of
26 the counts to which he is pleading guilty, the government shall have
27 the right (1) to prosecute the defendant on any of the counts to
28 which he pleaded guilty; and (2) to file any new charges that would

11

1  otherwise be barred by this Plea Agreement.  The decision to pursue
2  any or all of these options is solely in the discretion of the
3  United States Attorney's Office.  By signing this Plea Agreement,
4  the defendant agrees to waive any objections, motions, and defenses
5  he might have to the government's decision.  In particular, he
6  agrees not to raise any objections based on the passage of time with
7  respect to such counts including, but not limited to, any statutes
8  of limitation or any objections based on the Speedy Trial Act or the
9  Speedy Trial Clause of the Sixth Amendment.

10  **C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees
11  to waive all rights under the "Hyde Amendment," Section 617, P.L.
12  105-119 (Nov. 26, 1997), to recover attorneys' fees or other
13  litigation expenses in connection with the investigation and
14  prosecution of all charges in the above-captioned matter and of any
15  related allegations (including without limitation any charges to be
16  dismissed pursuant to this Plea Agreement and any charges previously
17  dismissed).

18                              **VIII.**

19                        **ENTIRE PLEA AGREEMENT**

20      Other than this Plea Agreement, no agreement, understanding,
21  promise, or condition between the government and the defendant
22  exists, nor will such agreement, understanding, promise, or
23  condition exist unless it is committed to writing and signed by the
24  defendant, counsel for the defendant, and counsel for the United
25  States.

26
27
28

                              12

**IX.**

**APPROVALS AND SIGNATURES**

**A.  Defense Counsel:**  I have read this Plea Agreement and have discussed it fully with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED:  11/16/09

MARK J. REICHEL
Attorney for Defendant

**B.  Defendant:**  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement.  In addition, no one has threatened or forced me in any way to enter into this Plea Agreement.  Finally, I am satisfied with the representation of my attorney in this case.

DATED:  11/16/09

MARK C. ANDERSON
Defendant

13

1    **C.   Attorney for United States:**  I accept and agree to this

2    Plea Agreement on behalf of the government.

3    DATED:   11\16\09

4                                        BENJAMIN B. WAGNER
                                         United States Attorney
5

6                              By: _R Steven Lapham_
                                   R. STEVEN LAPHAM
7                                  Assistant U.S. Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**Factual Basis for Plea**

The defendant owned and operated a business called Sausalito Cellars which, for a fee, offered to store client's wine under environmentally controlled conditions.  The defendant was not authorized to sell or otherwise dispose of his client's wine.  Initially, the defendant stored his client's wine at a facility in Sausalito, California, but later moved the wine to Wines Central warehouse in Vallejo, California.

Prior to October, 2005, the defendant began embezzling his client's wine and selling it to premium wine merchants and auction houses.  He did so primarily through an entity he created named Kansai Partners, LLC.  He also used the fictitious names Peter Martin and Joseph Throckmorten.

On or about 9/29/04, 5/6/05, 6/8/05, and 10/5/05, the defendant shipped some of this embezzled wine to The Chicago Wine Company (Counts 2 through 5).  Each of these shipments traveled in interstate commerce and had a value of at least $5,000.  In payment for these shipments, the Chicago Wine Company mailed checks to the defendant in the name of Kansai Partners and/or Joseph Throckmorten.  (Counts 6 through 14).  The defendant cashed these checks and deposited the proceeds into his own bank account.

Despite the fact that the defendant derived considerable income from the embezzlement of his client's wine, the defendant failed to file tax returns for the tax years 2001, 2002, 2003, and 2004 and therefore knowingly and willfully evaded payment of tax that he knew would be due and owing on that income.

On October 12, 2005, the defendant used gasoline soaked rags to intentionally start a fire in Bay 14 of Wines Central warehouse.  He then left the building.  Wines Central, a commercial warehouse engaged in activity affecting interstate commerce - namely, the storage of premium wine for numerous California wineries and also the storage of sugar for C&H sugar, was extensively damaged and suffered the loss of virtually its entire contents including approximately $6 million bottles of premium wine. During the fire suppression activities two firefighters were injured.

1