UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>MARK C. ANDERSON,<br><br>Movant. | No. 2:07-cr-96-KJM-EFB P<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Movant, proceeding without counsel, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] ECF No. 222. The government has filed an answer to the motion. ECF No. 236. Movant has not filed a reply within the time allotted.[2] For the reasons

---

[1] This motion was assigned, for statistical purposes, the following civil case number: 2:16-cv-2409-KJM-EFB.

[2] Movant sought, and was granted, multiple extensions of time to file his reply. *See* ECF Nos. ECF Nos. 237, 238, 239, 240, 241, 242, 243, 247, & 248. Finally, on January 31, 2018, the court denied a request for further extension and directed plaintiff to file his reply brief within seven days. ECF No. 250. On February 12, 2018, he filed three discovery motions and five lengthy declarations addressing various factual issues in his case. Then, on February 20, 2018 plaintiff submitted his reply brief. ECF No. 261.

The discovery motions are addressed below. Further, the court has reviewed movant's arguments in his tardy reply brief regarding his ineffective assistance of counsel claims. Nothing therein alters the findings and recommendation set forth below that these claims should be denied. Although the court has considered that late reply, Movant has not shown good cause for the late

1

discussed below, plaintiff's § 2255 motion must be denied. Further, as discussed below, plaintiff's discovery motions are denied.

## DISCOVERY MOTIONS

Movant has filed three discovery motions: (1) a motion for request of audio CD (ECF No. 251); (2) a motion for issuance of a subpoena duces tecum (ECF No. 257); and (3) a motion for request of audio CD (ECF No. 259). The first and third motions are identical in terms of their request. Both seek an instruction to the Clerk of Court to "deliver certain audio compact discs, and to have them transcribed, as originally ordered by this court on September 29, 2009 . . . ." ECF No. 251 at 1; ECF No. 259 at 1. Movant's second motion seeks issuance of a subpoena to the Sausalito Police Department for the delivery of "all video tapes, in its possession, which were seized from defendant's residential home and home-office for his businesses . . . which occurred approximately in April, 2004 and October, 2005." ECF No. 257 at 2.

I. <u>Legal Standards</u>

Pursuant to Rule 6(a) of the Rules Governing Section 2255 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." *See also* Rule 12, Rules Governing Section 2255 Cases ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Discovery is not, however, "meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)). Nor does

---

submission. He was admonished as to the seven day deadline for filing his reply brief in the court's January 31, 2018 order. Additionally, he was afforded numerous extensions of time prior to that order.

2

the availability of relief pursuant to section 2255 entitle a movant to an opportunity to retry his entire case. *United States v. Schaflander*, 743 F.2d 714, 722 (9th Cir. 1984).

II. Analysis

Movant has not demonstrated good cause for conducting discovery. None of these motions were timely filed. Rather than acting diligently and filing these motions shortly after he filed his section 2255 motion, movant waited until after the government had filed its answer and his opportunity to file a reply had elapsed to seek this discovery. And he has failed to offer any satisfactory reason for this delay. The motions state that movant has repeatedly requested these items (ECF No. 251 at 2; ECF No. 257 at 3), but he offers no citation to the record to support these assertions. In any event, an examination of the record in this case reveals that he failed to make any timely motion after the immediate section 2255 motion was filed. On January 31, 2018, movant was advised that, seven days after that date, his motion would be deemed submitted. ECF No. 250. Having generously granted movant numerous extensions of time, the court is disinclined to revisit that determination now. Thus, these motions are denied.

## SECTION 2255 MOTION

### Background

I. Procedural Background

Movant was indicted for arson, interstate transportation of fraudulently obtained property, mail fraud, using a fictitious name in connection with a scheme to defraud, and tax evasion. ECF No. 236-1 at 2-8. The factual background underlying these charges stems from movant's operation of a wine storage business. *Id.* at 2. Movant was alleged to have embezzled his clients' wine by shipping it out of state. *Id.* at 2-5. In so doing, movant allegedly transported the fraudulently obtained wine in interstate commerce, committed mail fraud, and used fictitious names in the course of committing said fraud. *Id.* He failed to report the income from the embezzled wine on his tax returns. *Id.* at 5-8. In October of 2005, movant allegedly set fire to the Vallejo, California warehouse where he stored his clients wine. *Id.* at 1-2. Injuries resulted from this alleged arson. *Id.* at 2.

/////

On November 16, 2009, movant plead guilty to all counts pursuant to a written plea agreement. ECF No. 109. He moved to withdraw that plea on March 29, 2011 and argued that his counsel at the time he entered the plea was ineffective. ECF No. 148. The court denied this motion on September 15, 2011, after an evidentiary hearing. ECF No. 175. Then, on February 7, 2012, movant was sentenced to a 324 month prison sentence. ECF No. 190 at 3.

Movant appealed his conviction and argued, *inter alia*, that his trial counsel – Mark Reichel – provided ineffective assistance. ECF No. 236-1 at 113-131. The U.S. Court of Appeals for the Ninth Circuit affirmed his conviction. *United States v. Anderson*, 617 F. App'x 742 (9th Cir. 2015). The Supreme Court denied his subsequent petition for certiorari.

II. Movant's Claims

Movant raises nineteen claims, some of which overlap. These are:

(1) he is actually innocent of the arson charge (ECF No. 222 at 5);

(2) the government violated *Brady v. Maryland*, 373 U.S. 83 (1963) when it concealed information about movant's location on the day of the fire (*id.* at 6);

(3) trial counsel was ineffective by failing to develop a 'minute-by-minute' chronology and map of where movant was on the day of the fire (*id.* at 8);

(4) his guilty plea was unlawfully induced insofar as his medication was withheld until he signed the plea agreement, Reichel told him to lie at the plea hearing, and the charges against him were never explained by either his counsel or the government (*id.* at 9);

(5) his conviction was based on a coerced, false confession and he did not commit any crimes (*id.* at 10);

(6) the government committed a second *Brady* violation when it failed to investigate unspecified witnesses who could provide "exculpatory and exonerating evidence" (*id.*);

(7) his trial counsel also failed to interview the aforementioned unnamed and exonerating witnesses (*id.*);

(8) the government committed a third *Brady* violation when it concealed cellphone data concerning movant's location on the day of the fire and also failed to consider other suspects and issues related to the warehouse fire equipment (*id.* at 13);

(9) he was denied ineffective assistance of counsel because the court did not allow him to choose his court-appointed attorney (*id.* at 14);

4

(10) he was forced to accept the government's rushed and incorrect appraisal of the wine inventory damaged in the fire (*id.*);

(11) the government failed to show how it computed the total inventory damages or how it assessed the damages to the warehouse (*id.*);

(12) the government failed to disclose the identities and cause of injury for the two firemen injured by the warehouse fire (*id.*);

(13) the government failed to evaluate the financial state of Wines Central at the time of the fire (*id.*);

(14) the government failed to investigate whether an unspecified business owner who had started a fire in Marin County was the true perpetrator of the warehouse fire (*id.*);

(15) the government failed to disclose many of its witnesses had false identification and movant's trial counsel failed to investigate unspecified 'key witnesses' (*id.* at 15);

(16) the government did not disclose that there were eye witnesses who could have testified that movant was at a 'distant location' on the day of the fire (*id.*);

(17) the government failed to disclose that it had tampered with movant's medication at the jail and movant's counsel failed to investigate his medical condition during pretrial proceedings (*id.*);

(18) counsel Mark Reichel failed to prepare for trial; was not competent to litigate federal tax issues; failed to communicate adequately with movant; failed to arrange meetings between movant and experts; and lied to movant about the details of the plea agreement (*id.*);

(19) counsel Jan Karowsky failed to prepare for trial after movant told him he wanted to proceed; did not research federal tax issues; did not move to proceed to trial after movant's motion to withdraw was denied; did not investigate witness statements and "geo-locational" information about the day of the fire; did not investigate Jack Krystal and his history of 'burning things up or down'; and did not investigate three unnamed women who managed wines central. *Id.* at 16.

## Legal Standards

I. Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it

5

concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.") Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

Claims or arguments raised on appeal are not cognizable in a § 2255 motion. *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claims previously raised on appeal "cannot be the basis of a § 2255 motion."); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."). *See also Davis v. United States*, 417 U.S. 333, 342 (1974) (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law). Conversely, claims that could have been, but were not, raised on appeal are not cognizable in § 2255 motions. *United States v. Frady*, 456 U.S. 152, 168 (1982( (a collateral challenge is not a substitute for an appeal); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal"); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal"). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (same).

/////

"Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255 collateral review." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).

Claims challenging the sufficiency of the evidence are not cognizable in § 2255 motions. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against him" was not cognizable in § 2255 motion); *Barkan v. United States*, 362 F.2d 158, 160 (7th Cir. 1966) ("a collateral proceeding under section 2255 cannot be utilized in lieu of an appeal and does not give persons adjudged guilty of a crime the right to have a trial on the question of the sufficiency of the evidence or errors of law which should have been raised in a timely appeal"); *United States v. Collins*, 1999 WL 179809 (N.D. Cal. Mar. 25, 1999) (insufficiency of the evidence is not a cognizable attack under section 2255).

## II. Plea Bargains

The Ninth Circuit has held that "[p]lea bargains are contractual in nature and must be measured by contract law standards." *United States v. Escamilla*, 975 F.2d 568, 571 (9th Cir. 1992) (internal quotations omitted). It is settled that a defendant may waive his right to bring a section 2255 petition. *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). The right to bring a collateral attack under section 2255 is statutory, and a "knowing and voluntary waiver of a statutory right is enforceable." *Id.* A plea agreement does not waive the right to bring a section 2255 petition unless it does so expressly, however. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). Additionally, a waiver will not apply where: (1) a guilty plea fails to comply with Fed. R. Crim. P. 11; (2) the sentencing judge informs a defendant, contrary to the terms of the plea agreement, that he retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violated the law. *See United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009).

/////
/////
/////
/////

Analysis

I. <u>Non-IAC Claims Are Barred by Waiver</u>

The government argues, and the court agrees, that movant waived his right to attack his non-ineffective assistance of counsel claims when he entered his plea.[3] The relevant plea agreement expressly waived the right to bring a section 2255 petition:

> Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

ECF No. 236-1 (Ex. C) at 43-44. On November 16, 2009 - the day movant entered his plea - the court advised him:

> Now, in addition, sir, you are giving up the right of appeal and collateral attack. What that means is that so long as I sentence within the agreement that you've made with the government, no court, higher, lower, at the same level, no court will have the authority to examine these proceedings to determine whether they are legally proper or whether there is a factual basis for your pleas.
>
> Do you understand?

*Id.* (Ex. B) at 20-21. Movant stated that he so understood. *Id.* at 21. Additionally, a review of the transcript further demonstrates that movant entered the agreement knowingly and voluntarily. In relevant part:

> The Court: Have any threats been made against you or any member of you (sic) family or anyone dear to you in order to get you to plead guilty?
>
> The Defendant: No, sir.
>
> The Court: Have you been subjected to any force in order to get you to plead guilty?
>
> The Defendant: No, sir.
>
> The Court: Did you read the Plea Agreement before you signed it?

---

[3] The government, citing *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996) and *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994), acknowledges that "[a] plea agreement's waiver of the right to appeal or collateral attack cannot likely waive the right to file a § 2255 motion asserting IAC." ECF No. 236 at 20 n. 8.

8

> The Defendant: Yes, sir.
>
> The Court: Were any promises made to you to plead guilty that were not included in the written Plea Agreement?
>
> The Defendant: No, sir.
>
> The Court: Are you now, or have you been in the last 24-hours under the influence of alcohol, drugs, or any mind-altering substance?
>
> The Defendant: Just my medication. Just my regular medication.
>
> The Court: Do you believe they are in any way affecting your ability to understand what's going on today?
>
> The Defendant: No, sir.

*Id.* at 24-25. The court then instructed the government to set forth the elements of the offenses which it would be required to prove beyond a reasonable doubt if movant elected to proceed to trial. *Id.* at 25-28. Movant stated that he understood these elements and the government's burden of proof at trial. *Id.* at 28. The court indicated that it was satisfied that: (1) movant understood the agreement; (2) the nature of the charges against him; (3) the consequences of his plea; and (4) that his waiver of constitutional rights was free and voluntary. *Id.*

Movant now alleges that, during the plea colloquy, he lied about both his mental state and whether he had been coerced into pleading guilty. ECF No. 236-1 at 9. He claims that he had taken "a lot of opiate pain medications, mainly MORPHINE-based" for recently diagnosed skin cancer, diabetic neuropathy, gall bladder removal, and post-traumatic stress syndrome. *Id.* Movant further alleges that staff at the Sacramento County Jail withheld these medications until he agreed to sign the plea agreement and that Mark Reichel – his counsel – instructed him to lie during the colloquy. *Id.* The government points out that these issues were raised before the trial court in 2011, after movant attempted to withdraw his plea. *See Id.* at 439-41 (Ex. X). Pursuant to the trial court's instructions, the United States Marshals Service investigated movant's medical care at the county jail found no evidence to support his claims. *Id.* at 449-50. At a hearing on the matter on May 11, 2011, Judge Karlton found no merit to movant's contentions, referring to movant's claims regarding his medical care as "preposterous" and "BS." *Id.* at 470-71. Having carefully reviewed the record evidence currently before the court, the undersigned finds that

1 movant has failed to offer any credible evidence that he was either incompetent to plead guilty or coerced into doing so.

To the extent movant argues that his purported actual innocence circumvents the foregoing waiver, the court disagrees. First, movant has not established that an "actual innocence" exception to an otherwise enforceable appeal waiver exists. And other district courts in this circuit that have considered this potential exception have not found authority to support it. *See*, *e.g.*, *United States v. Jaquez-Diaz*, CR 04-0021-PHX-PGR, 2008 U.S. Dist. LEXIS 124601, *13 (D. Ariz. November 26, 2008) (holding that "a claim of 'actual innocence' does not, in and of itself, provide a basis for overturning a conviction. Instead, a claim of 'actual innocence' provides a mechanism through which a petitioner may have a court consider an otherwise procedurally defaulted claim of a constitutional violation.") (adopted by *United States v. Jaquez-Diaz*, No. CR-04-0021-PHX-PGR, 2009 U.S. Dist. LEXIS 7884 (D. Ariz., Feb. 2, 2009)); *Frank v. Banks*, NO. CV 10-08535 JAK (SS), 2011 U.S. Dist. LEXIS 88198, *19 (C.D. Cal. July 15, 2011) ("Thus, Petitioner's cited authority does not establish any actual innocence exception to otherwise enforceable appeal waivers.") (adopted by *Frank v. Banks*, NO. CV 10-08535 JAK (SS), 2011 U.S. Dist. LEXIS 88197 (C.D. Cal., Aug. 9, 2011)). Second, movant has failed to establish that he is actually innocent of the crimes for which he was convicted. His argument is predicated on his own testimony, the testimony of his fiancé, and his own interpretation of cellular data. ECF No. 222 at 18-162. His current evidence is contradicted by that of other witnesses and the government's own interpretation of the cellular data. Movant simply asks that this court now reweigh the evidence and credibility of testimony that the jury relied upon to convict him. But that evidence was more than adequate to support the jury's verdict. In its opposition to movant's motion to withdraw his plea, the government laid out its case against him. *See* ECF No. 236-1 (Ex. S) at 270-278. Having compared the government's statement of its case with the evidence offered by movant in his current motion, the court cannot conclude that no reasonable juror would have convicted him. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

Having determined that movant cannot demonstrate that he is actually innocent,[4] the court also finds that movant's claims regarding the invalidity of his plea are procedurally defaulted because he could have raised them on direct appeal, but failed to do so. *See Massaro v. United States,* 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."); *see also United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error."). On direct appeal movant argued that: (1) a "personal conflict" between movant and his counsel prevented counsel from acting as an effective advocate; (2) counsel's deficient performance was evidenced by an "illusory plea agreement" that accorded movant no benefit; (3) the trial court erred in in denying movant's motion to withdraw his plea on the basis of ineffective assistance; (4) the government breached the terms of the plea agreement when it failed to make recommendations consistent with the terms of the agreement; and (5) his sentence was unreasonable insofar as the trial court failed to apply the factors under 18 U.S.C. § 3553(a). *United States v. Anderson*, 617 F. Appx 742, 745-47 (9th Cir. 2015). He contends that he failed to raise the incompetence and coercion arguments on direct appeal because his appellate counsel told him the record was insufficiently developed to do so. ECF No. 222 at 9. Instead, appellate counsel allegedly informed movant that he could raise these claims by way of a section 2255 motion and develop them by way of an attendant evidentiary hearing. *Id.* The Supreme Court has held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). A movant may show cause, however, where appellate counsel was ineffective. *Id.* at 488-92. Movant has not raised a claim that his appellate counsel was ineffective. Additionally, in light of the trial court record, the court

---

[4] The court recognizes that, if movant could show actual innocence, it could consider claims that were otherwise procedurally defaulted. See Schlup, 513 U.S. at 323-27. As noted supra, however, he cannot make this showing.

11

concludes that movant had no likelihood of succeeding on a claim that he was either incompetent to enter the plea or coerced into doing so. *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (appellate counsel's failure to raise an issue on appeal does not amount to ineffective assistance if there was no reasonable likelihood of success in arguing the issue).

Based on the foregoing, all non-IAC claims are barred by waiver, including:

(1) movant's claim that he is actually innocent of the arson;

(2) the government hid information about movant's location on the day of the fire;

(3) movant was forced to sign the plea agreement or have his medication withheld;

(4) movant's conviction was based on a coerced, false confession and he did not commit any crimes;

(5) the government failed to investigate unspecified witnesses who could provide "exculpatory and exonerating evidence";

(6) the government concealed cellphone data concerning movant's location on the day of the fire and also failed to consider other suspects and issues related to the warehouse fire equipment;

(7) movant was forced to accept the government's rushed and incorrect appraisal of the wine inventory damaged in the fire;

(8) the government failed to show how it computed the total inventory damages or how it assessed the damages to the warehouse;

(9) the government failed to disclose the identities and cause of injury for the two firemen injured by the warehouse fire;

(10) the government failed to evaluate the financial state of Wines Central at the time of the fire;

(11) the government failed to investigate whether an unspecified business owner who had started a fire in Marin County was the true perpetrator of the warehouse fire;

(12) the government failed to disclose that many of its witnesses had false identification;

(13) the government did not disclose that there were eye witnesses who could have testified that movant was at a 'distant location' on the day of the fire; and

(14) the government failed to disclose that it had tampered with movant's medication at the jail.

/////

1    II.    IAC Claims

As a preliminary matter, all of movant's current ineffective assistance claims were or should have been known to him at the time he took his direct appeal. He only raised two claims related to ineffective assistance, however, namely that: (1) his irreconcilable conflicts with Reichel deprived him of effective representation; and (2) that Reichel recommended that movant enter into an "illusory" plea agreement which conferred no benefit. *Anderson*, 617 F. App'x at 745-46. The Ninth Circuit rejected both arguments. *Id.* at 745-46. Thus, his other IAC claims now appear to be procedurally defaulted. *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to default."). As noted *supra*, movant has not offered any convincing evidence which demonstrates his actual innocence - that is, he has not demonstrated that, more likely than not, no reasonable juror would have convicted him. *See Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000). Nor has he demonstrated cause for the default.

Regardless, the court concludes that all of movant's ineffective assistance claims are meritless and it will dispose of them on that basis for the reasons identified below.

A.    Movant's IAC Claims Against all Trial Counsel

1.    Failure to Create a Minute by Minute Chronology

Counsel did not render ineffective assistance by failing to create a "minute by minute chronology and map" of movant's location on the day of the arson. In his sworn declaration submitted with respect to movant's motion to withdraw his plea, his counsel Mark Reichel states:

> Importantly, in the last 2 weeks before trial Mr. Lapham advised me that his case agent was preparing the report on the cell phone towers in the area of the arson which would conclusively establish Mr. Anderson was at the wine warehouse at the time of the arson. *Mr. Anderson did not dispute this, as he repeatedly advised me that he was present and spoke with Ms. Polverino and others there that day, but that he had left several minutes before the fire started and had no motive or reason to start the fire, but that these individuals in fact did have such a motive.* Ms. Polverino and the others who were going to testify that they were with Mr. Anderson the day of the fire at the warehouse, were, in my opinion, unaware of the government evidence of the cell data on Mr. Anderson which put him at the warehouse that day, and were unaware of this strong government

13

> evidence at the time that they made their statements to the case agents about the events of the day of the fire. Thus, their statements, made in the days after the fire, appeared credible when so corroborated.

ECF No. 236-1 at 186-87 (Ex. I) (emphasis added). Reichel also stated, with respect to movant's cell phone records, that:

> Mr. Anderson's cell phone records showed him making a phone call to Debbie Polverino moments before the fire. Ms. Polverino, shortly after the fire, reported this phone call. The government's cell phone tower data showed Mr. Anderson's whereabouts at the time of this call. Those whereabouts were in an area he would be in if he had left the wine storage warehouse at the Ms. Polverino stated that he had left.
>
> Mr. Anderson never to me disputed this issue. (sic) His defense was that Ms. Polverino hated him (which appeared accurate) as did the other employees and owner of the building. And, his case was very high profile and in the new for the wine embezzlement in state court. As such, Mr. Anderson's defense theory was that these persons set the fire themselves. They would achieve the result of blaming their nemesis, Mr. Anderson, and also collect on insurance proceeds and end the business that they were in, which was managing the warehouse, a task they hated, per Mr. Anderson.
>
> Prior to accepting his guilty plea, Mr. Andersen (sic) was fully informed of the cell phone tower data that Mr. Lapham advised me his agent had. I discussed this with Mr. Anderson on numerous occasions. He acknowledged that this would not be inconsistent with our defense, *as he acknowledged he was at the warehouse just before the fire,* and that he did in fact call Ms. Polverino after leaving the warehouse.

*Id.* at 188-89 (emphasis added). Based on movant's conversations with Reichel and the government's cell phone tower data, it is unclear how undertaking a detailed mapping of movant's position on the day of the fire would have been a constructive use of counsel's time or resources. Indeed, doing so would have been at odds with the defense strategy counsel and movant had discussed. The Ninth Circuit has held that "[o]nce counsel reasonably selects a defense, it is not deficient performance to fail to pursue alternative defenses." *Rios v. Rocha*, 299 F.3d 796, 807 (9th Cir. 2002).

Moreover, once Jan Karowsky became movant's counsel, he did investigate movant's whereabouts on the day of the arson. Indeed, movant's current motion actually includes the hotel and restaurant records which Karowsky subpoenaed in an attempt to establish movant's whereabouts on the day of the arson. ECF No. 222 at 130-37.

14

### 2. Failure to Interview Witnesses with Exculpatory Evidence

Nor does movant demonstrate that his counsel ignored witnesses with "exculpatory and exonerating evidence." As the government notes, movant fails to name the witnesses whom counsel failed to interview. For instance, in one of his attached declarations, movant states that he contracted with two unidentified certified public accountants during the preparation of his tax returns. ECF No. 222 at 106. He takes issue with the failure of his trial attorneys to contact these accountants (*id.*), but he does not provide the names of these individuals or, more importantly, describe what exonerating evidence they might have provided. Moreover, in the above mentioned declaration, Reichel stated that "[movant] would routinely provide the name of a witness who would have exonerating information, only to find out they had 'heard from someone that Mark didn't do this fire.'" ECF No. 236-1 at 187 (Ex. I). Reichel also stated that "[movant] repeatedly had bizarre defense theories and would provide names of witnesses who did not exist, none that we could find at least." *Id.* at 179.

### 3. Movant was not Allowed to Choose his Attorney

Movant claims that the trial court denied him effective assistance of counsel when it appointed Mark Reichel, whom he did not choose. ECF No. 222 at 14. This claim has no legal basis. The Supreme Court has held that "[t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). Thus, movant cannot complain that the trial court failed to appoint the attorney he would have preferred.

### B. Movant's IAC Claims Related to Mark Reichel

#### 1. Reichel was not Competent to Litigate Tax Matters

Movant argues that Reichel was not competent to litigate tax matters, but does not describe how Reichel's performance was actually deficient with respect to the tax issues in this case. *See LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998) ("In considering a claim of

/////

ineffective assistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance"). Thus, he has failed to demonstrate the requisite prejudice.

### 2. Reichel was Ineffective in Failing to Prepare for Trial

Movant argues that Reichel was ineffective in failing to prepare for trial. This claim is at odds with the statements in Reichel's affidavit wherein he notes that "[movant's] case was in fact prepared and ready to go to trial." *Id.* at 187. Reichel's affidavit also indicates a significant level of trial preparation insofar as he states that he "'pre-tried the case' at the jail on a few occasions with [movant] and he agreed that the chances were high for a loss." *Id.* Consequently, the court finds that this claim is belied by the record. In any event, movant did not suffer prejudice as a result of any deficiency in trial preparation because, as noted above, he avoided trial by accepting a plea deal that was knowing and voluntary.

### 3. Reichel Lied to Movant About the Plea Agreement

Movant's claim that Reichel lied to him about the plea agreement and his likely sentence is without merit. As noted *supra*, during the colloquy movant represented that he had read the plea agreement. ECF No. 236-1 (Ex. B) at 24-25. Thus, he understood its contents.[5] Additionally the sentencing court instructed the government to set forth the elements of the offenses which would it would be required to prove beyond a reasonable doubt if movant elected to proceed to trial; movant indicated that he understood the elements and burden of proof. *Id.* at 25-28. Finally, Reichel's declaration states that he never told movant (as movant has suggested) that "he would receive anything near a time served or [an] 18 month sentence." *Id.* (Ex. I) at 189.

### 4. Reichel Failed to Identify the Injured Firefighters

Movant's claim that Reichel failed to identify the firefighters injured in the arson is meritless insofar as movant does not identify how he was prejudiced by this failure. First, movant did not go to trial and any testimony these firefighters might have given is moot. Second, Reichel noted that movant's narrative about the arson was that he had been at the warehouse on the day in

---

[5] The court has already rejected movant's contention that he was incapable of understanding the agreement due to his medication or that he was coerced into accepting the agreement.

question, but had left several minutes before the fire started. *Id.* at 186. Thus, it is unclear what information the injured firefighters – who arrived after the fire started-[6] could have provided to bolster this narrative.

### 5. Reichel Failed to Arrange Meetings Between Movant and Experts

Finally, movant argues that Reichel failed to arrange meetings between him and the experts retained to assist in his defense. This claim is belied by Reichel's declaration, wherein he states that the experts reported their findings to both counsel and movant. *Id.* at 188. Moreover, movant has not described, in any precise terms, how he was prejudiced by Reichel's alleged failure to arrange these meetings.

## C. Movant's IAC Claims Related to Jan Karowsky

### 1. Failure to Prepare for Trial

Movant argues that Karowsky did not prepare to go to trial or move for a trial after movant lost the motion to withdraw his guilty plea. The failure of this claim is obvious on its face. Once the court determined that movant would not be allowed to withdraw his plea, Karowsky had no reason to prepare for trial and any motion to proceed to trial would have been frivolous. *See, e.g.*, *United States v. Moore*, 921 F.2d 207, 210 (9th Cir. 1990) (it was not ineffective assistance of counsel to decline to raise a meritless motion for directed verdict).

### 2. Geo-Locational Information

Movant argues that Karowsky failed to follow up with unidentified witnesses regarding "geo-locational information discovered." ECF No. 222 at 16. As discussed *supra*, Karowsky investigated movant's whereabouts on the day of the arson. Moreover, movant has not indicated precisely which witness statements Karowsky failed to follow up on, or exactly what "geo-locational" evidence failed Karowsky failed to consider.

/////

/////

---

[6] In the government's opposition to movant's motion to withdraw his plea, it noted that the fire alarm was triggered at 3:34 p.m. and firefighters arrived at the scene approximately six minutes later. ECF No. 236-1 (Ex. S) at 272.

### 3. Jack Krystal

Movant's argument that Karowsky failed to investigate the background of Jack Krystal is also meritless. Movant's motion mentions Krystal and his "history of with burning things up or down" (*see id.*), but provides no evidence that this individual had any involvement whatsoever with the arson in this case. As such, movant cannot show that, but for Karowsky's failure to follow this line of inquiry, there was a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 693-94.

### 4. Wines Central Managers

Similarly, the court rejects movant's contention that Karowsky rendered ineffective assistance by failing to investigate "the three women who managed wines central." ECF No. 222 at 16. Movant has not shown that investigating these individuals would have altered the trajectory of his case in any meaningful way.

### 5. Tax Competency

Finally, movant argues that Karowsky failed to research federal tax matters, was himself untrained in tax issues, and refused to hire a federal tax specialist. *Id.* Movant has not identified any specific tax issues which Karowsky actually failed to handle competently. Thus, he has not shown that he was prejudiced by Karowsky's tax-related shortcomings (assuming such shortcomings existed).

## Movant's Reply Brief

As noted *supra* in note two, movant filed a tardy reply brief which the court has nevertheless elected to consider. ECF No. 261. The reply brief, totaling sixty-seven pages, is a digressive, sometimes rambling account, as to why "there is no case" against the movant. *Id.* at 4. The court is wholly unconvinced. Movant's protestations that: (1) he was not at the warehouse on the day of the fire (*id.* at 7); (2) he lacked the physical ability to set the warehouse fire (*id.* at 7, 10); and (3) he lacked any motive to set the warehouse fire (*id.* at 15) do not establish his actual innocence. As noted above, a claim of actual innocence can succeed only where a movant can demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *See Schlup*, 513 U.S. at 329. At best, movant's contentions merely

suggest a plausible, alternative reading of the evidence. They do not establish that no reasonable juror could have convicted him on the evidence presented. There was ample evidence to support the jury's verdict. The same holds true for movant's other counts, namely those concerning his failure to file tax returns,[7] the use of aliases[8] and mail fraud.

Next, movant argues that "all" relevant evidence was suppressed in violation of *Brady*. The court has already found this claim barred by his plea agreement.

Finally, the court has reviewed the reply brief's arguments regarding his ineffective assistance of counsel claims. It finds that nothing therein alters its conclusion that these claims should be denied.

## Conclusion

Based on the foregoing, it is HEREBY ORDERED that movant's Motion for Request of Audio CD (ECF No. 251), Motion for the Issuance of a Subpoena Duces Tecum (ECF No. 257), and Motion for Request of Audio CD (ECF No. 259) are DENIED.

Further, it is RECOMMENDED that movant's motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 222) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the

---

[7] Movant appears to allege that the cause was, at least in part, that his tax preparer was "seriously and mentally-incapacitated, probably was suffering from dementia for a lengthy period of time." ECF No. 261 at 32. He offers no evidence to support such an assertion.

[8] Movant alleges that the actions of an assistant/business partner, "Rick Sajbel", explain the theft and loss of his customer's wine. ECF No. 261 at 38. He alleges that Mr. Sajbel was wholly responsible for "the entire program" of selling wine across state lines. *Id.*

19

1 | event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing
2 | § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a
3 | final order adverse to the applicant).
4 | DATED: January 28, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE