UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK ANDERSON,<br><br>Defendant. | No. 2:07-cr-00096-KJM<br><br><br><br>ORDER |

Defendant Mark Anderson moves for an order modifying his term of imprisonment to a term of home confinement under 18 U.S.C. § 3582(c). Mot., ECF No. 277. Defendant asserts COVID-19 poses a heightened danger to him based on his medical history of, among other things, hypertension, atrial fibrillation and obesity.[1] The government opposes the motion based on defendant's previous recovery from COVID-19 and application of the 18 U.S.C. § 3553(a) sentencing factors. Having considered defendant's motion, the court **denies** it.

/////

/////

---

[1] The court grants the government's requests to file under seal exhibit 2 (defendant's health records) and exhibit 3 (Presentence Investigation Report ("PSR")) to protect defendant's private medical information. *See Chester v. King*, No. 1:16-cv-01257, 2019 WL 5420213, at *2, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

1

I.     BACKGROUND

In October 2005, defendant set fire to a Vallejo wine storage facility. Opp'n 6, ECF No. 285. The fire destroyed millions of dollars' worth of inventory belonging to defendant's clients and injured two firefighters. *Id.* Defendant had no prior criminal record. Mot. at 7. But federal agents investigating the fire discovered defendant had been selling his clients' wine at auction under two aliases and keeping the proceeds for himself. *See, e.g.,* PSR ¶¶ 13–20 (under seal). On March 15, 2007, defendant was indicted on one count of arson (18 U.S.C. §844 (i)), four counts of interstate transportation of fraudulently obtained property (18 U.S.C. § 2314), nine counts of mail fraud (18 U.S.C. § 1341), one count of use of a fictitious name (18 U.S.C. § 1342) and four counts of tax evasion (18 U.S.C. § 7201). *See generally* Indictment, ECF No. 1. On November 16, 2009, defendant pled guilty. *See* Plea Agreement 2, ECF No. 108. On February 7, 2012, the previously assigned district judge sentenced defendant, then 63 years-old, to 324 months' imprisonment with 60 months' supervised release. Sentencing Mins., ECF No. 182; Mot. at 7.

Defendant asserts he has medical conditions that make him particularly vulnerable to serious harm from COVID-19. Now 71 years-old, defendant states he has heart disease, hypertension, obesity and sleep apnea. Mot. at 7. Defendant also suffers from chronic pain, chronic staph infections, cellulitis and has a history of cancer. *Id.* at 7, 10. Defendant tested positive for COVID-19 in April 2020. *Id.* at 11. At that time, defendant was hospitalized with a fever of 103 degrees and difficulty breathing. *Id.* Defendant "went into afib" and received treatment. *Id.*

Defendant is housed at FCI Terminal Island. Mot. at 8. FCI Terminal Island is a low security, Care Level 3 medical facility. *Id.* at 12. Defendant lives in a single room with approximately 100 other individuals. Shamsher Samra M.D. Decl., Ex. 1 ¶ 13, ECF No. 277-1. Practicing social distancing at the facility is essentially impossible as bunk beds are placed in an open room with 2 to 3 feet between them. *Id.*. In April 2020, FCI Terminal Island suffered an outbreak of COVID-19, and by August, 642 of the 930 inmates in the facility had tested positive. Mot. at 12; Mot. Ex. 6 3, ECF No. 277-6. Forty inmates, including defendant, were hospitalized

and ten died. Mot. at 12. Twenty-three staff members also tested positive. *Id*. As of this writing, FCI Terminal Island reports only six inmate and nine staff members are testing positive for COVID-19. Fed. Bureau of Prisons, COVID-19 Coronavirus Page.[2] To date, 542 inmates and 26 staff members are reported as having recovered. *Id.*

On July 5, 2020, defendant submitted to the Warden a request for a reduction in his sentence under 18 U.S.C. § 3582. Mot. at 8 & Ex. 2. ("Req. to Warden"), ECF No. 277-2. On September 1, 2020, the Warden denied defendant's request. Mot. at 8.

Defendant has submitted a release plan, indicating he intends to move to the Bay Area or somewhere near a University of California hospital, if he is released. Reply, Ex. 9, ECF No. 287-9. He has supplemented his initial filing to clarify that the Saint Vincent De Paul Society has several vacancies and can accommodate him, offering to waive defendant's rent during his initial stay; the period of rent waiver will reportedly allow him time to get his social security status reinstated following incarceration and start receiving payments. Suppl. Release Plan Information, ECF No 288.

II. <u>LEGAL STANDARD</u>

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018[3]. Under the statute, a court may grant a defendant's motion to reduce his prison term, provided the defendant first satisfies an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i). Generally, exhaustion requires defendant first seek compassionate release with the Bureau of Prisons (BOP), exhaust all appeals or show that at least 30 days have lapsed and BOP has failed to respond to defendant's request, whichever is earlier. *United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *3 (E.D. Cal. July 7, 2020). Once the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody. 18 U.S.C. § 3582(c)(1)(A). Second, the court

---

[2] https://www.bop.gov/coronavirus/index.jsp (last visited January 4, 2020).
[3] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. *Id.*

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since the passage of the First Step Act (FSA),[4] district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding. A number of courts have determined the policy statement is no longer binding, but others have nonetheless "turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed on other grounds* (9th Cir. April 13, 2020) (No. 20-35334).

In resolving the instant motion, this court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

---

[4] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

4

### III. DISCUSSION

The parties do not dispute defendant exhausted his administrative remedies as required by § 3582(c). Opp'n at 9. The court thus considers whether defendant demonstrates extraordinary and compelling reasons for his release and whether applicable sentencing factors of § 3553(a) support his motion.

#### A. "Extraordinary and Compelling Reasons"

##### 1. Defendant's Risk of Reinfection

Courts are currently divided on the question of the risk of reinfection once someone has had COVID-19. Some courts have found, in light of the scientific uncertainty surrounding society's present understanding of COVID-19, a previous infection cuts against compassionate release. *See, e.g., United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020) ("releasing uninfected inmates mitigates the concrete risk of them getting infected, releasing [defendant] would reduce the risk of him getting reinfected. That risk is . . . speculative.").

Other courts, including this one, have opted to "err on the side of caution to avoid potentially lethal consequences for [defendant]" because "simply announcing that an inmate has 'recovered' does not mean [defendant] is completely safe from the virus." *United States v. Armstrong*, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *3 (S.D. Cal. July 30, 2020) (internal quotations, citation omitted) (finding "particularly persuasive that an inmate, being housed at the same facility as [defendant], was hospitalized and died after he was pronounced 'recovered' by the BOP"); *see United States v. Yellin*, No. 3:15-CR-3181-BTM-1, 2020 WL 3488738, at *2 (S.D. Cal. June 26, 2020) (granting compassionate release of inmate with underlying medical conditions and infected with COVID-19 who did not develop severe symptoms, because, among other things, inmates were not tested for COVID-19 unless they displayed symptoms and given risk reinfection would have on inmate's health); *United States v. Fernandez*, No. 2:16-CR-00115-KJM, 2020 WL 5909490, at *4 (E.D. Cal. Oct. 6, 2020).

The government claims defendant's recovery from COVID-19 after he contracted it in April 2020 makes the possibility of his contracting COVID-19 again less than "extraordinary

and compelling." Opp'n at 14–17. But given the scientific uncertainty surrounding COVID-19, and defendant's risk of reinfection while incarcerated, this court finds defendant can still show "extraordinary and compelling reasons" exist despite his previous recovery.

### 2. Medical Condition

Defendant argues his health problems make him particularly susceptible to developing serious complications from a COVID-19 reinfection, which is an "extraordinary and compelling reason" warranting his release. Mot. at 24. The government acknowledges defendant has a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." Opp'n at 14 (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)).

District courts have found comorbidities constitute medical conditions that increase the risk of severe illness from COVID-19 warranting compassionate release. *United States v. Fernandez*, No. 2:16-CR-00115-KJM, 2020 WL 5909490, at *5 (E.D. Cal. Oct. 6, 2020). Defendant suffers from several comorbidities including but not limited to obesity and hypertension. Mot. Ex. 13 at 74 (under seal); *id.* Ex 12 at 13 (under seal). *See, e.g., United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("obesity alone" and "hypertension alone" placed defendant "at higher risk of COVID-19 complications"); *United States v. Levario*, No. 12-00399, 2020 U.S. Dist. LEXIS 105211, at *9 (E.D. Cal. June 15, 2020); *United States v. Sanders*, No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts . . . have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic."). The court finds his combination of health conditions weighs in favor of defendant's release.

### B. Sentencing Factors

Defendant's argument that he is not a danger to the community and that the sentencing guidelines weigh in his favor is limited to a single contention: "[h]e is a very weak and seriously ill person" with no prior criminal history. Mot. at 24. The government opposes defendant's motion, asserting defendant remains a danger to the community and lacks a verified

release plan. Opp'n at 17–21. The government argues the § 3553(a) factors weigh against release based on 1) the danger defendant poses to the community, 2) the nature of defendant's offense, and 3) the interest of deterrence and providing just punishment. *Id.* The government further points out that each of the medical conditions defendant points to as supporting compassionate release predates the criminal activity for which he is currently incarcerated. *Id.* at 20; *see also* PSR ¶¶ 78–83.

The Sentencing Guidelines advise "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196 (E.D. Wash. 2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). The court thus considers whether the defendant is a danger to the community, taking into account the defendant's other circumstances as well. U.S.S.G. § 1B1.13 cmt. 4 (noting court's "unique position" to evaluate defendant's family circumstances and potential danger to any other person or community within meaning of Bail Reform Act). The court considers dangerousness broadly defined. *United States v. Zaragoza*, No. CR-08-0083 PJH, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm.").

Here, defendant has served approximately half of his 27-year sentence, Opp'n at 6, and has incurred no disciplinary record since entering prison. Reply at 13. But defendant's arson offense presented a serious threat of physical harm to others, and each of his several offenses caused severe harm, including both physical and pecuniary harm. While defendant experiences limited mobility and various health issues, those medical issues do not negate the potential for him to present an ongoing danger of harm to the community. Any one of defendant's numerous fraud charges underlying his sentence could have been accomplished through his careful planning with minimal physical activity on his part. Defendant's sparse release plan, even as supplemented, does not allay the court's concerns. Defendant represents he intends to rely on

7

social security disability income and is working with a social worker to find permanent housing. As noted, his release plan as supplemented represents that a nonprofit provider is prepared to provide temporary housing rent-free while defendant arranges for his benefit payments. Suppl. Release Plan Information at 1. The release plan's lack of other meaningful detail is concerning given that defendant's previous crimes were committed when he had the same or similar medical conditions and was experiencing financial duress, with no indication the plan acknowledges this contributing factor or addresses it. *See* Hr'g Tr. 9, ECF 192-3.

In considering all the relevant factors, on the current record, the court **denies** defendant's motion.

IV. <u>CONCLUSION</u>

(1) Defendant's motion for compassionate release, ECF No. 277, is denied.

(2) The government's request to file under seal, *see* ECF No. 286, is granted.

(3) The government's motion to brief the release plan or to impose quarantine, ECF No. 285 at 27, is denied as moot.

IT IS SO ORDERED.

DATED: January 5, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE