UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:07-cr-00096-KJM |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Mark C. Anderson, | |
| Defendant. | |

Defendant Mark Anderson is a seventy-three-year-old man with a long and complicated medical history. He has renewed his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Renewed Mot., ECF No. 306. In ruling on Anderson's first motion, this court found Anderson's "health conditions weigh[ed] in favor of his release." Order at 5–6, ECF No. 289. But the court denied Anderson's motion because he failed to show the relevant § 3553(a) sentencing factors weighed in favor of reducing his sentence. *Id.* at 6–8. The court had one primary concern: Anderson did not sufficiently address whether his release would present a danger to the community. *See id.* (citing, e.g., U.S.S.G. § 1B1.13).

**I.    DISCUSSION**

Before revisiting Anderson's potential danger to the community and relevant sentencing factors under 18 U.S.C. § 3553(a), the court first addresses Anderson's updated medical profile.

1

**A.     Anderson's Updated Medical Profile**

Since this court denied Anderson's first motion, there have been two important developments regarding his health. First, Anderson received two doses of Pfizer's COVID-19 vaccine.[1] *See* Opp'n at 4, ECF No. 310. Second, Anderson's health has further deteriorated, with congestive heart failure and kidney failure extending his already long list of medical conditions. *See* Renewed Mot. at 2–4.

As before, Anderson's medical profile weighs in favor of his release. He has a striking history of medical problems, including hypertension, acute respiratory disorder, congestive heart failure, chronic kidney disease, hypoxia, morbid obesity, a history of cancer, and many others. *See generally* BOP Med. Records, Opp'n Ex. 2 (sealed). He is seventy-three years old. *Id.* He weighs more than 300 pounds. *See id.* at 172. His first COVID-19 infection led to alarming complications. *See* Med. Records at 63–64, Mot. Ex. 13, ECF No. 277 (sealed) (describing "medical emergency" that led to Anderson's being "sent to outside hospital via 911/ambulance"). As the government acknowledges, he is frequently treated by medical staff both inside and outside of FCI Terminal Island. *See* Opp'n at 6–7 (citing BOP Med. Records at 1–148, noting "Anderson was treated by BOP medical staff at least seven times in October [2021] and virtually every day in September [2021]"). This history includes Anderson's December 31, 2021 trip to the emergency room in which he had a 104.1-degree fever and was "lethargic," "moaning incoherently," and "look[ed] acutely ill." Med. Records at 70–71.

It is now well-established that many aspects of Anderson's health profile raise his risk of severe illness from COVID-19. *See, e.g.*, U.S. Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions* (July 31, 2022)[2] (listing heart failure, history of cancer, obesity, and chronic kidney disease as factors increasing one's risk of severe illness from COVID-19); *id.* ("Older adults are at highest risk of getting severely ill from COVID-19. More than 81% of

---

[1] For perspective, the first COVID-19 vaccine in the United States was administered less than a month before this court ruled on Anderson's first motion.

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

COVID-19 deaths occur in people over age 65."); *id.* ("A person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases."); *id.* ("The risk of severe illness from COVID-19 increases sharply with higher BMI."). Anderson therefore remains at risk of severe illness if reinfected with COVID-19.

The waning protection created by Anderson's previous infection and two doses of the COVID-19 vaccine only bolster this conclusion.. Anderson received his COVID-19 vaccine doses more than twenty months ago, in December 2020 and January 2021. *See* BOP Medical Records at 495, Opp'n Ex. 2 (sealed). He has not, as far as the court is aware, received any booster shots. Even if he has, he remains at heightened risk of serious illness from COVID-19. *See Neutralization Escape by SARS-CoV-2 Omicron Subvariants BA.2.12.1, BA.4, and BA.5*, N. Engl. J. Med. (July 2022)[3] (concluding "the BA.2.12.1, BA.4, and BA.5 subvariants substantially escape neutralizing antibodies induced by both vaccination and infection") (cited in U.S. Ctrs. for Disease Control & Prevention, *New COVID-19 Vaccine Effectiveness Data Showcase Protection Gained by 3rd and 4th Doses* (July 2022))[4]; U.S. Ctrs. for Disease Control & Prevention, *Variant Proportions* (July 2022)[5] (noting the BA.2.12.1, BA.4, and BA.5 sub variants accounted for about 99.8% of SARS-CoV-2 in the United States during the week that ended on July 23, 2022); *see generally* Vijayan Decl., Mot. Ex. 1, ECF No. 292-1.

In sum, Anderson's risk of severe illness remains an extraordinary and compelling reason that weighs in favor of reducing his sentence. *Cf. United States v. Mathews*, 557 F. Supp. 3d 1057, 1060–67 (E.D. Cal. 2021) (granting compassionate release where vaccinated defendant experienced several symptoms months after his initial COVID-19 infection).

/////

/////

/////

---

[3] https://www.nejm.org/doi/full/10.1056/NEJMc2206576.

[4] https://www.cdc.gov/media/releases/2022/s0715-COVID-VE.html.

[5] https://covid.cdc.gov/covid-data-tracker/#variant-proportions.

      **B.**      **Danger to the Community and Relevant § 3553(a) Factors**

Anderson has also now sufficiently addressed the court's "danger to the community" concerns, which the court spelled out in its previous order:

> [D]efendant's arson offense presented a serious threat of physical harm to others, and each of his several offenses caused severe harm, including both physical and pecuniary harm. While defendant experiences limited mobility and various health issues, those medical issues do not negate the potential for him to present an ongoing danger of harm to the community. Any one of defendant's numerous fraud charges underlying his sentence could have been accomplished through his careful planning with minimal physical activity on his part. Defendant's sparse release plan, even as supplemented, does not allay the court's concerns. . . . The release plan's lack of . . . meaningful detail is concerning given that defendant's previous crimes were committed when he had the same or similar medical conditions and was experiencing financial duress, with no indication the plan acknowledges this contributing factor or addresses it.

Prev. Order at 7–8. Anderson's updated verified release plan, ECF No. 325-1, adequately addresses these concerns. Anderson has worked with a social worker and community organizations to provide a plan designed to facilitate his safe transition back into the community. *See generally id.* Anderson's social worker has obtained a verified, indefinite housing placement for Anderson at "Blessings Care," a board and care home in Sacramento roughly 1.5 miles from the U.C. Davis Medical Center. *See id.* at 1. A probation officer has confirmed the housing placement and advised the court it is acceptable. Anderson's social worker has verified Anderson qualifies for social security benefits that will cover his costs of living at Blessings Care, *see id.*, and the Saint Vincent De Paul Society has pledged its support for up to three months of Anderson's rent while Anderson works to have his social security benefits reinstated, *see id.*; SVDP Letter, ECF No. 325-2. Anderson has additional financial support: His social worker has verified he will be eligible to reinstate his supplemental security income upon release, *see* Release Plan at 1, and he will receive Medicare benefits to cover his medical expenses, *see id.* at 2. Anderson also has practical support: Blessings Care connects residents with transportation to medical appointments and the social security office, *id.* at 1, and Anderson has been accepted into the Exodus Project, a reentry program that offers a variety of services to support recently incarcerated people reentering society, *see*

Exodus Letter, ECF No. 325-3. Finally, Anderson and his social worker have verified staff at his current custodial facility, FCI Terminal Island, will arrange his transportation to Sacramento upon his release. *See* Release Plan at 2. Anderson's verified release plan sufficiently allays the court's concerns about potential dangerousness.

Finally, although Anderson's crimes were serious, other relevant § 3553(a) sentencing factors weigh in favor of his release. Anderson has accepted responsibility for his crimes, including pleading guilty to all nineteen charges brought against him. *See* Presentence Investigation Report ¶¶ 1, 20, 38, 66 (sealed). Prior to committing the crimes for which he is now serving time, Anderson had no criminal record. *Id.* ¶¶ 68–70. Nor does Anderson have a disciplinary record after more than a decade in prison, and the BOP has found him to be at "minimum risk" of reoffending. *See* Pattern Risk Score at 1, Reply Ex. 3, ECF No. 297-3. Moreover, Anderson has now served almost 60 percent of his sentence. *See* Inmate Data, Opp'n Ex. 1, ECF No. 310-1. And, as explained above, this court is satisfied that his release plan sufficiently addresses the need to protect the public from further crimes. On balance, the relevant sentencing factors weigh in favor of granting Anderson's motion for compassionate release.

## II. CONCLUSION

The court thus **grants** Anderson's motion for compassionate release. The court modifies Anderson's 324-month sentence to time served. All previously imposed conditions of supervised release remain in effect.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days for Anderson to make appropriate travel arrangements and for BOP to ensure his safe release. Anderson shall be released as soon as appropriate travel arrangements are made and it is safe for him to travel. There shall be no delay in ensuring travel arrangements are made. If more than seven days are needed to make appropriate travel arrangements and ensure Anderson's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

The court **grants** Anderson's requests to seal confidential medical documents, ECF Nos. 304, 307 & 314. The court also **grants** the government's request to seal Anderson's confidential

1 | medical records and the copy of the presentence investigation report provided with its briefing,
2 | ECF No. 311.
3 |     This order resolves ECF No. 304, 306, 307, 311 & 314.
4 |     IT IS SO ORDERED.
5 | DATED: September 30, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE